**In the Matter of David B. BUTCHMAN and Suzanne M. Butchman, Debtors.**

**Bankruptcy No. 80 B 20137.**

United States Bankruptcy Court, S. D. New York.

Oct. 27, 1980.

See also, Bkrtcy., 4 B.R. 379.

Irving H. Picard, New York City, U. S. Trustee.

Gerald A. Kagan, New York City, pro se.

## DECISION ON MOTION FOR AN ORDER REOPENING PROCEEDINGS FOR PURPOSE OF REVIEWING ATTORNEY'S FEE.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The Standing Chapter 13 trustee and the United States Trustee for the Southern District of New York have moved, pursuant to 11 U.S.C. 350(b), for an order reopening the above-captioned Chapter 13 case which previously was dismissed by order dated June 4, 1980 (appeal dismissed on August 12, 1980) for the limited purpose of seeking a review of the fee arrangement between Gerald A. Kagan, Esquire, counsel who had filed the Chapter 13 petition on behalf of the debtors, and Mr. and Mrs. Butchman, the debtors in this case. Additionally, they seek an order directing Mr. Kagan to remit to the debtors the entire amount of the compensation previously paid to him together with the $60 filing fee.

After notice and hearing, the court makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. This Chapter 13 case was commenced by the filing of a joint petition on behalf of David B. and Suzanne M. Butchman on April 14, 1980 (11 U.S.C. 302(a)).

2. That petition indicated that the debtors were represented in that case by Gerald A. Kagan, Esquire.

3. Attachments to the petition further indicated that:

a. David B. Butchman was employed as a marketing representative by Keave Associates beginning two months prior to the commencement of the case, at an annual salary of $36,000.

b. Suzanne M. Butchman was employed as an office manager at a Caldor Department Store, at an annual salary of $11,000 in 1979, having been employed by that corporation for six years.

c. The Butchmans have three children, ranging in age from 6 years to 10 years.

d. Aggregate liabilities of about $40,000, all of which was owed to two secured creditors (including a mortgage of about $38,000 on the debtor's residence at 33 Granite Springs Road in Yorktown Heights, New York). Property, including the home on which the mortgagee was foreclosing was valued at a total of $52,200, all of which was claimed as exempt.

4. In his attorney's disclosure statement pursuant to Bankruptcy Rule 219(b), dated March 28, 1980, and executed by Mr. Kagan, he stated that prior to the filing of the petition he had received $500 for legal services rendered and to be rendered and that no balance was due.

5. A meeting of the Butchmans' creditors was scheduled and held on April 30, 1980 (11 U.S.C. 341(a)).

6. The confirmation hearing which had been scheduled immediately following that meeting was adjourned in order to permit the Court an opportunity to determine whether the case should be dismissed in view, among other reasons, of a pre-petition foreclosure sale of the debtors' residence.

7. After a hearing, this Court rendered a decision (6 BCD 403, 2 CBC 2d 174), dated June 4, 1980, finding, among other facts, that

a. Mr. Kagan had mailed the debtors' petition to the Bankruptcy Court in White Plains towards the end of the week preceding the April 14th filing rather than filing the petition in person.

b. The foreclosure sale took place at 10:00 A.M. on April 14th and the Butchmans' Chapter 13 petition was received and stamped by the clerk at 12:04 P.M. on that day. This Court held that, under New York law, the foreclosure sale effectively terminated the debtors' legal title or equity in the mortgaged premises. This Court ordered that the case be dismissed.

8. By order dated August 12, 1980, this Court dismissed the appeal from the June 4th order on the ground that the appeal was not filed within ten days of the dismissal order as required by Bankruptcy Rule 802.

9. Mr. Butchman thereafter met with and reported to the United States Trustee the following facts relating to the debtors' introduction to Mr. Kagan and his handling of this Chapter 13 case, all of which were not contradicted by Mr. Kagan:

a. Mr. Butchman had received in March, 1980 an unsolicited letter from Midland Equities of New York, Inc., an entity offering to help him deal with his financial difficulties.

b. Mr. Butchman visited Midland's offices at 2 Penn Plaza, New York City, to obtain assistance with his financial difficulties and paid a $500 fee.

c. The female person at Midland with whom Mr. Butchman met referred him to Mr. Kagan.

d. Mr. and Mrs. Butchman thereupon met with Mr. Kagan and on or about March 24, 1980, Mr. Butchman gave Mr. Kagan a check in the amount of $860.00, covering his compensation and the filing fee.

e. Mr. and Mrs. Butchman on several occasions made Mr. Kagan aware of a foreclosure sale of their residence which was scheduled for April 14, 1980.

f. Mr. and Mrs. Butchman executed their petition on or about March 28, 1980, and assumed under the circumstances that it would be filed in advance of April 14th.

g. Mr. and Mrs. Butchman did not become aware until they appeared at the meeting of their creditors on April 30, 1980, that the foreclosure sale had taken place on April 14th and that there had been an undue delay in the filing of their petition.

h. Mr. Kagan informed the Butchmans that he would fight the foreclosure sale and the motion to dismiss their Chapter 13 case.

i. Mr. Kagan did not notify the Butchmans of this Court's decision of June 4th, which dismissed the case, or that the appeal from that order had been dismissed on August 12th.

j. Mr. and Mrs. Butchman became aware of the dismissal of their case during the month of September when Mrs. Butchman called Mr. Kagan and he informed her of that fact.

## DISCUSSION

The United States Trustee for the Southern District of New York, appointed by the Attorney General, 28 U.S.C. 581(a)(2), in accordance with the pilot program established under Section 408 of the Bankruptcy Reform Act of 1978, Pub.L. 95–598, is uniquely stationed to review the fee arrangements between the debtors and their counsel. Since Code § 341(c) forbids the Bankruptcy Judge from presiding or attending creditors' meetings, it becomes the lot of the United States Trustee in the pilot areas to assume the function of eliciting information at the creditors' meeting respecting fee arrangements. To be sure, the United States Trustee is charged with supervising the administration of bankruptcy cases, 28 U.S.C. 586(a)(3), which necessarily entails a review of counsel fees paid by debtors. To assist him in this function the United States Trustee is authorized to appoint one or more individuals to serve as standing trustee. 28 U.S.C. 586(b). The Bankruptcy Court is then ultimately responsible for deciding whether or not to

deny compensation to an attorney, to cancel a compensation arrangement and to order the return of compensation in excess of the reasonable value of services provided in U.S.C. 329(b).

Pursuant to his statutory duties, the United States Trustee has obtained information sufficient to cause him to seek a judicial review of the fee arrangement between Gerald A. Kagan, Esquire, the attorney for the debtors in this case. This application was made returnable in this Court the same day that a similar application for review was made returnable with respect to Mr. Kagan's services in another Chapter 13 case in which he represented the debtors, *In re Rivera*, 6 B.R. 686 (Bkrtcy.S.D.N.Y.1980). The unpleasant facts in both cases were heard separately; the hearing in this case followed immediately after the *Rivera* case, supra.

In this case the debtors lost their house due to a foreclosure sale held Monday morning, April 14, 1980 at 10:00 A.M. before the filing of their Chapter 13 petition at 12:04 P.M. on that day. Had the debtor's attorney filed the Chapter 13 petition with this court before the foreclosure sale was held, the automatic stay provisions under Code § 362 would have enjoined the foreclosure sale. The attorney for the debtors chose not to file the petition in person, but instead mailed it to the court on Thursday, April 10, 1980 of the previous week. The petition was executed by the debtors on March 28, 1980. Therefore if the debtor's attorney desired to use the mails for filing he had ample time after March 28, 1980 for the petition to be received by the court before April 14, 1980.

■ Apart from this blunder the debtor's attorney either neglected or deliberately failed to inform his clients that the foreclosure sale had taken place; their Chapter 13 petition was dismissed by order of this court dated June 4, 1980 and that he unduly delayed filing a notice of appeal which resulted in the dismissal of the appeal on August 12, 1980.

This court cannot countenance the debtors' attorney's flagrant inattention to his clients' affairs. Having accepted a fee, albeit a misstated one, he was duty-bound to represent his client competently, *Canon 6, Code of Professional Responsibility, 29 McKinney's Consolidated Laws*, and zealously within the bounds of the law. *Canon, Code of Professional Responsibility, supra.* He did neither. One entrusted with the legal responsibility for representing the financial affairs of a distressed debtor owes no less a duty to perform his legal services with integrity and zealous competence than the attorney representing an affluent client. A deviation from the highest standards of ethical responsibility in either case should not be condoned.

In this case, as in two other cases filed in this court by this attorney, *In re Rivera*, supra and *In re Fuhst*, No. 80-B-20301, the Rule 219(b) Statement incorrectly specified the counsel fee as $500, whereas in truth, the actual fee was $800. This court stated in the *Rivera* case supra that such conduct is hardly consistent with the standard of integrity required of all attorneys.

■ Accordingly, having failed to perform legal services for these debtors in accordance with the standards of ethical responsibility required of all attorneys, in that this attorney failed to apprise his clients and this court of information which he deliberately withheld, this attorney is not entitled to retain any of the compensation which he received from his erst-while clients.

## CONCLUSIONS OF LAW

1. The application of the Standing Chapter 13 Trustee and the United States Trustee to reopen this case is granted.

2. Gerald A. Kagan, Esquire shall remit to the debtors the $800 in compensation they paid to him, together with the $60 filing fee they paid.

SUBMIT ORDER ON NOTICE.